UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOMMIE LEE COLEMAN,

        Petitioner,

                                  Case No.  1:12-cv-131

v.

                                  Hon. Gordon J. Quist

MARY BERGHUIS,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, I recommend that the petition be denied.

### I.      Background

Following a jury trial in 2008, petitioner was convicted of one count of first-degree premeditated murder, M.C.L. § 750.316(1)(a), and one count of first-degree felony murder, M.C.L. § 750.316(1)(b).  *People v. Coleman,* No. 290162, 2010 WL 1568452 at *1 (Mich. App. April 20, 2010).  "[Petitioner's] convictions arose from the robbery and shooting death of the victim, Darrius Phillips, in Battle Creek, Michigan on April 7, 1994.  On that date, Phillips and Eugene Jarrett were selling drugs, namely crack cocaine, out of a house located at 11 Hanover Street."  *Coleman,* 2010 WL 1568452 at *1.  "According to Anthony Watson, he was at another drug house in Battle Creek that night when defendant and another man, Keith Cork, came into the house.  Watson testified that defendant propositioned him to 'go hit a lick,' meaning participate in a robbery at

1

another drug house, specifically, 11 Hanover Street." *Id*. Petitioner was identified as the gunman who shot Phillips. *See id*. at *1-2. In explaining the 14 year gap between the commission of the crime and the conviction, the Michigan Court of Appeals noted that:

> This homicide, classified as a "cold case," remained unsolved and sat dormant in the Battle Creek police department until late September or early October 2006 when police received a letter titled the "guardian letter." According to police, the "guardian letter" contained significant details about Phillips' homicide, including who was involved, and thus, police were able to reopen their investigation.

*Id*. at fn. 1.

The trial court sentenced petitioner to mandatory life imprisonment without possibility of parole on both counts. Sent. Trans. (ECF No. 27-20, PageID.661). While petitioner's convictions were affirmed on appeal, the matter was remanded to modify the judgment of sentence, with instructions that " [t]he judgment shall specify that defendant was convicted of and sentenced on one count of first-degree murder supported by the two theories of premeditated murder and felony murder." *Coleman*, 2010 WL 156842 at *5. The new judgment of sentence was entered on June 24, 2010, reflecting that petitioner was convicted and sentenced on one count of first-degree premeditated murder supported by those two theories, with a life sentence. *See* Judgment of Sentence (ECF No. 27-21).

Petitioner, through counsel, raised two issues in his direct appeal to the Michigan Court of Appeals:

> I. In this trial which turned on the testimony of prosecution witness Anthony Watson, who was an undisputed accomplice, was due process violated by the delivery of contradictory and mutually irreconciable [*sic*] jury instructions regarding the assessment of that witness' testimony; and was trial counsel ineffective for failing to object?

II.     Was double jeopardy violated when the court imposed two convictions and two sentences for a single offense?

Appellate Brief (ECF No. 27-26, PageID.751).

As discussed, the Michigan Court of Appeals affirmed the convictions, but remanded for entry of a new judgment of sentence. *See Coleman*, 2010 WL 156842.   Petitioner raised the same two issues in his pro per application for leave to appeal to the Michigan Supreme Court, which that court denied because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Coleman,* No. 141219 (Mich. Oct. 26, 2010) (ECF No. 27-27, PageID.799).

On January 19, 2012, Coleman mailed a document entitled "Protective Petition for Writ of Habeas Corpus" to the United States District Court for the Eastern District of Michigan. See Proof of Service (ECF No. 1, PageID.6).   On February 1, 2012, that court filed this document as a petition for habeas corpus. *See* Petition (ECF No. 1).   This petition raised the three new issues set forth petitioner's motion for relief from judgment. *See* discussion, *infra*.   On February 9, 2012, that Court transferred the petition to the Western District of Michigan because petitioner was convicted in Calhoun County and incarcerated in Muskegon County, both of which lie in the Western District. *See* Order (ECF No. 5).

While petitioner was pursuing his federal habeas petition, he was also seeking relief in the state court.   On January 20, 2012, petitioner filed a *pro se* motion for relief from judgment pursuant to MCR 6.500 *et seq*. raising three issues (in his words):

I.      Defendant Coleman was denied due process of law and the constructive denial of counsel during the "critical" pretrial period when his court-appointed defense counsel completely failed to consult with him prior to the start of his capital trial.

II.	Defendant Coleman was denied his due process right to a fair trial and Sixth Amendment guarantee to the "effective" assistance of counsel where, trial counsel not only failed to investigate and present known witnesses who would have testified favorably defendant's capital trial, but counsel also failed to investigate and present known possible alibi witnesses.

III.	Defendant Coleman was denied his due process right to a fair appeal and the "effective" assistance of appellate counsel on his direct appeal by right where counsel failed to raise the above two "significant" and "obvious" constitutional claims, since there was a reasonable probability that, inclusion of the two Sixth Amendment violation issues would have changed the result of the appeal.  Instead, appellate counsel pursued weaker, unpreserved, and unsuccessful claims on direct appeal.

Motion for relief from judgment (ECF No. 27-22, PageID.666-667).

In a one-sentence order dated February 29, 2012, the trial court stated that "Defendant's Motion for Relief from Judgment is denied pursuant to MCR 6.502(G) and further the same issue was heard and denied by the Court of Appeals."  Order (Feb. 29, 2012) (ECF No. 27-23).  The trial court's decision was not responsive to petitioner's motion, i.e., the rule cited by the trial court (MCR 6.502(G)) applied to a successive motion for relief from judgment.[1]  Petitioner moved for reconsideration, pointing out that this was his first and only motion for relief from judgment.  *See* Motion for reconsideration (ECF No. 27-24).  In another one-sentence order, the trial court denied the motion for reconsideration stating "IT IS ORDERED that the motion is

_____

[1] MCR 6.502(G) ("Successive Motions") provides as follows:

(1) Except as provided in subrule (G)(2), regardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction. The court shall return without filing any successive motions for relief from judgment. A defendant may not appeal the denial or rejection of a successive motion.

(2) A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.

4

denied for the reason that no new issues were presented to the Court." Order (March 19, 2012) (ECF No. 27-25).

On March 23, 2012, Coleman filed an amended petition in this Court, seeking federal habeas relief on four grounds (in his words):

> I.      The constructive denial of trial counsel during the critical stage of the pre-trial period where defense counsel completely failed to consult with defendant prior to the start of trial.

> II.     Failure of trial counsel to investigate and present known alibi witnesses who would have testified favorably for defense.

> III.    Ineffective assistance of appellate counsel for failing to raise the two previous claims on direct appeal by right.

> IV.     Contradictory and mutually irreconcilable jury instructions as to assessment of witness' testimony; and trial counsel was ineffective for failing to object.

Amend. Petition (ECF No. 13, PageID.43-48). After reviewing the amended petition and noting that it contained unexhausted claims, the Court stayed this matter to allow Coleman to exhaust his claims in the state court. *See* Order (ECF No. 15).

While the federal habeas petition was stayed, petitioner appealed the three claims raised in his motion for relief from judgment to the Michigan Court of Appeals, which denied petitioner's application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Coleman*, No. 312200 (Jan. 4, 2013) (ECF No. 27-28, PageID.884). Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, which denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Coleman*, No. 146727 (July 30, 2013) (ECF No. 27-29).

Petitioner filed a second amended petition for habeas relief, which listed the three claims raised in the motion for relief from judgment. *See* Second Amended Petition (ECF No. 22). After respondent filed her answer, petitioner moved to supplement the second amended petition because he had omitted one of the claims which his appellate counsel had raised in the direct appeal. The Court allowed this motion and directed respondent to address this claim in a supplemental answer. *See* Order (ECF No. 34).

After all of these preliminary proceedings, the following issues are before the Court on the third amended habeas petition (in his words):

> I.     Petitioner was denied due process and his Sixth Amendment right to "effective" assistance of counsel where trial counsel not only failed to investigate and present known witnesses who would have testified favorably at his trial, but counsel also failed to investigate and present known alibi witnesses.

> II.    Petitioner was denied due process of law and the constructive denial of counsel during the "critical" pretrial period when his court-appointed defense counsel failed to consult with him prior to the start of his trial.

> III.   Petitioner was denied his due process right to a fair appeal and the "effective" assistance of appellate counsel on direct appeal where "significant" and "obvious" Sixth Amendment claims since there was a reasonable probability that, inclusion of the two above Sixth Amendment claims would have changed the result of the appeal, instead, appellate counsel pursued weaker, unpreserved, and unsuccessful claims on direct appeal.

> IV.    In the trial that turned on the testimony of prosecution witness Anthony Watson, who was an undisputed accomplice, due process was violated by the delivery of contradictory and mutually irreconcilable jury instructions regarding the assessment of that witness' testimony; and trial defense counsel was ineffective for failing to object.

*See* Second Amend. Petition (ECF No. 22, PageID.213-216) (referring to matters in Memorandum); Memorandum (ECF No. 18, PageID.148) (listing Issues I, II and III); Order (ECF No. 34, PageID.942) (listing Issue IV).

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies.  *See* 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied").  As discussed, petitioner has exhausted all state remedies.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011) (internal quotation marks omitted).  The federal habeas statute "imposes a highly deferential standard for evaluating state-

court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Finally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## III. Discussion

### A. Trial counsel was ineffective for failing to investigate and provide known witnesses

As discussed, none of the Michigan state courts provided a reasoned opinion for denying petitioner's motion for relief from judgment. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. Here, petitioner contends that two witnesses, Ms. Sharon Coleman and Mr. Jerry Coleman, could provide an alibi defense.

Petitioner stated that Mr. Jerry Coleman called defense counsel, "at least 7-8 times" before the trial stating that on the night of the murder, April 7, 1994, petitioner was at a party in Detroit, Michigan, 122 miles from the site of the murder in Battle Creek. Petitioner's Memorandum (ECF No. 18, PageID.164-165). Although Mr. Jerry Coleman was willing to testify, defense counsel never responded. *Id.* Mr. Jerry Coleman has submitted an affidavit dated January 20, 2012 (about 18 years after the murder) stating that he personally witnessed petitioner at his home in Detroit, Michigan, on Wednesday, April 6, 1994, and that "based on information and belief" petitioner "remained in the Detroit area until returning to Battle Creek, Michigan, on Sunday, April 10, 1994." Jerry Coleman Affidavit (ECF No. 18-1, PageID.192). Mr. Jerry

Coleman later executed a correction to the affidavit, stating that defense counsel contacted him once, leaving a message with his wife, and that he left several detailed messages with counsel regarding the party petitioner "attended in Detroit on the day in question[]." *See* Jerry Coleman Correction to Affidavit (ECF No. 18-1, PageID.190).

Petitioner also stated that Sharon Coleman spoke with defense counsel by telephone "on several occasions" and informed counsel that petitioner was in Detroit on the night of the murder. Memorandum at PageID.165. Sharon Coleman executed an affidavit similar to Jerry Coleman, stating that she personally witnessed petitioner in Detroit on April 6, 1994, and that "based on information and belief" petitioner remained in the Detroit area until April 10, 1994. Sharon Coleman Affidavit (ECF No. 18-1, PageID.192).

Based on this record, the Court concludes that petitioner's counsel was not ineffective for failing to investigate or provide these two witnesses. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690. "Surmounting *Strickland*'s high

bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, the court considers whether counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994)(quoting *Strickland*, 466 U.S. at 689).

Second, the court determines whether counsel's deficient performance was prejudicial. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id.* The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

With respect to petitioner's present claim, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."

*Strickland*, 466 U.S. at 691. Counsel's duty includes investigating all witnesses who may have information concerning his client's guilt or innocence. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

The affidavits provided by Ms. Sharon Coleman and Mr. Jerry Coleman regarding petitioner's location on the operative date -- April 7, 1994 -- are based merely on information and belief. Nothing in the affidavits indicate that either Sharon Coleman or Jerry Coleman had personal knowledge of petitioner's whereabouts at the time of the shooting on that date. Furthermore, petitioner was not prejudiced because the statements contained in the witness' affidavits were not based on personal knowledge and could not support an alibi defense. Accordingly, this claim should be denied.

> **B.    Petitioner was constructively denied counsel during a critical period when his defense counsel failed to consult with him prior to the trial.**

Petitioner contends that he was constructively denied counsel during a critical stage of pre-trial proceedings in violation of the Sixth Amendment under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court identified three scenarios in which a criminal defendant is entitled to a presumption of prejudice. The first scenario is implicated here, i.e., "courts must presume prejudice where there has been a 'complete denial of counsel' at a 'critical stage' of the criminal proceedings." *Cronic*, 466 U.S. at 659. Because petitioner was represented by counsel throughout the criminal proceedings, his claim involves the constructive denial of counsel. "Constructive denial of counsel occurs where 'counsel entirely fails to subject the

prosecution's case to meaningful adversarial testing,' or another 'constitutional error of the first magnitude' violating the right to counsel is shown." *United States v. Detloff*, 794 F.3d 588, 593 (6th Cir. 2015).

Here, petitioner states that "during the 'critical' period," defense counsel "literally threw her hands in the air and conceded Defendant Coleman's inevitable doom when she failed to consult with him during the critical pretrial stage prior to the start of his capital trial." Petitioner's Brief (ECF No. 13-3, PageID.119). In her brief, respondent set forth portions of the record which contradict petitioner's claim that his trial counsel failed to consult with him prior to trial:

Trial counsel was appointed on Coleman's behalf before trial. (6/6/08 Petition and Order for Court Appointed Attorney at 1.) After she was appointed, counsel filed her appearance and legal demands which included a demand for a pretrial conference, preliminary examination, reports and witness information. (6/9/08 Appearance). Thereafter, counsel appeared with, and on Coleman's behalf, during his preliminary examination which was conducted on two dates, approximately one month apart. (6/17/08 Prelim. Exam. Tr. at 1; 7/25/08 Prelim. Exam. Tr. at 1). *See Coleman v. Alabama*, 399 U.S. 1 (1970) (the petitioner's preliminary hearing was a critical stage during which the assistance of counsel was required).

At the preliminary examination, Dr. Loomis, the forensic pathologist who performed Darrius Phillips' autopsy in 1994, testified as to his findings. (6/17/08 Prelim. Exam. Tr. at 10-11.) On the second date for the preliminary examination, both Eugene "Gene" Jarrett and Anthony Watson testified. (7/25/08 Prelim Exam. Tr. at 4-48, 51-83). Coleman was present at both hearing dates during which the prosecution presented this significant testimony, and was with counsel for this testimony. (6/17/08 Prelim. Exam. Tr. at 1; 7/25/08 Prelim. Exam. Tr. at 1). In the months after the case was bound over for trial, trial counsel filed her discovery demands and updated disclosures, reflecting her on-going preparation. *See, e.g.* 9/4/08 Disclosure at 1; 11/19/08 Continuing Disclosure at 1-2; 12/1/08 Continuing Disclosure at 1-2; 12/8/08 Continuing Disclosure at 1-2.

Additionally, counsel filed a motion to disqualify the trial judge in which counsel averred on Coleman's behalf that, "Defendant believes this Court does not like him." 9/5/08 Motion to Disqualify at 1. After filing this motion, counsel appeared with Coleman at the motion hearing, indicating she and Coleman had been in communication during the pretrial period. (9/29/08 Motion Hr'g Tr. at 3) ("My

client *has told me* that . . .”). (emphasis added). In short, the record belies Coleman's claim that he was deprived of counsel during a critical stage of the proceedings because counsel did not consult with him before trial.

Respondent's Answer (ECF No. 26, PageID.274-276).

This record of counsel's interaction with petitioner and the state court belies petitioner's claim that he was constructively denied defense counsel prior to trial. Petitioner has not demonstrated that counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing" or another "constitutional error of the first magnitude violating the right to counsel." *See Detloff*, 794 F.3d at 593. Accordingly, petitioner's claim of error should be denied.

### C.     Ineffective assistance of appellate counsel

Next, petitioner contends that his appellate counsel was ineffective for failing to raise the ineffective assistance of counsel claims set forth in §§ III.A. and B. *See* Second Amend. Pet. (ECF No. 22, PageID.216); Memo (ECF No. 18, PageID.174-175). There is no duty for appellate counsel to "raise every 'colorable' claim suggested by a client" and that doing so "would disserve the very goal of vigorous and effective advocacy [.]" *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical decisions regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel does not need to raise every nonfrivolous argument. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

14

"Moreover, not only must the issue omitted be significant, but it must also be 'obvious.'" *Shelton v. McQuiggin*, 651 Fed. Appx. 311, 314 (6th Cir. 2016), citing *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (listing factors relevant to determining whether appellate counsel was ineffective).

As discussed, petitioner's arguments raised in §§ III.A. and B are without merit. Petitioner suffered no prejudice by appellate counsel's failure to raise these issues. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). Accordingly, petitioner's claim of ineffective assistance of appellate counsel should be denied.

> **D.    The trial court's use of contradictory and irreconciliable jury instructions regarding petitioner's accomplice and prosecution witness Anthony Watson violated petitioner's right to due process, and his trial counsel was ineffective for failing to object.**

On appeal, petitioner contended that he was convicted "almost exclusively on the basis of Anthony Watson, an undisputed accomplice who, by even his own admission, wielded a gun during the offense and solely executed the robbery of the survivor, Eugene Jarrett." Petitioner's Brief on Appeal (ECF No. 27-26, PageID.761). The trial court gave two standard jury instructions with respect to Anthony Watson: one instruction with respect to weighing his testimony as a person which a previous criminal conviction; and one instruction with respect to weighing his testimony as a person who was an accomplice. *See id.*, 2010 WL 1568452 at *5, fn. 4, 5 and 6. Petitioner's appellate counsel framed the issue as follows:

Under these circumstances, there was substantial reason to doubt Mr. Watson's testimony inculpating Mr. Coleman. Accordingly, the jury was given the standard "undisputed accomplice" instruction, suggesting that it evaluate Mr. Watson's testimony very carefully, bearing in mind the significant benefits Mr. Watson gained for incriminating Mr. Coleman. [Trial 12/16/08 pp 818-819].

Unfortunately, the import of the accomplice instruction was completely undermined when the court additionally gave a wholly contradictory instruction advising the jury that it must treat Mr. Watson's testimony the same as that of any other witness. [Trial 12/16/08 pp 817-818]. Owing to the erroneous delivery of such incongruent and mutually irreconcilable instructions, Mr. Coleman was deprived of the due process right to be tried by a properly instructed jury. US Const. Ams V, VI, XIV; Const 1963. art 1, § 7. Manifest injustice occurred, because the erroneous instruction pertained to a basic and controlling issue in the case. *People v. Rice (On Remand)*, 235 Mich App 429, 443; 597 NW2d 843 (1999).

Petitioner's Brief at PageID.762.

Petitioner's appellate counsel went on to state:

The conflicting instructions placed the jury in a quandary about how to regard Anthony Watson's testimony. . . .

Mr. Coleman's jury was duly empowered to look askance at Mr. Watson's testimony because of his role in the crime and the leniency he gained for involving Mr. Coleman. But the benefit of the doubt which otherwise inured to Mr. Coleman – in light of the death of any other evidence connecting him to the crime – was completely usurped by the previous instruction, which admonished the jury not to treat Mr. Watson any differently than any other witness.

Petitioner's Appellate Brief (PageID.764).

As an initial matter, the Michigan Court of Appeals construed this issue as waived on appeal, noting that defense counsel approved the jury instruction, and that " 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' *People v. Carter*, 462 Mich. 206, 215, 612 N.W.2d 144 (2000)." *Coleman*, 2010 WL 1568452 at *3. However, the court in *Carter* ultimately reviewed this claim as one for ineffective assistance of counsel, stating that while the issue was

waived on appeal, "defendant revive[d] his argument by asserting that defense counsel was ineffective for failing to object to allegedly contradictory jury instructions." *Id.* Similarly, the appellate court allowed petitioner to raise the waived argument as a claim for ineffective assistance of counsel.

The appellate court summarized the operative facts as follows:

According to Anthony Watson [FN 2], he was at another drug house in Battle Creek that night when defendant and another man, Keith Cork, came into the house. Watson testified that defendant propositioned him to "go hit a lick," meaning participate in a robbery at another drug house, specifically, 11 Hanover Street. Watson testified that defendant explained that people were selling drugs out of a backyard and that they did not have weapons. Watson thought it would be "easy" to rob the unarmed drug dealers and agreed to participate to get "quick money." Watson stated that they hatched a plan to approach the dealers, pretend to buy drugs, pull out money, and then commit the robbery. Watson testified that it was his understanding that they were only bringing weapons as "intimidation tools" and there was no plan to kill anyone during the robbery. Watson had a .357 revolver and defendant had a small caliber pistol. Watson testified that he left the drug house in a truck with defendant, Cork, and the driver of the truck, Willie Edwards. They parked in a parking lot near 11 Hanover Street. According to Watson, Edwards did not leave the truck. Watson stated that he, defendant, and Cork left the truck and walked toward the backyard area of the target house, and though it was dark outside they could see two men in the backyard.

There is confusion in the record regarding whether two or three men approached Phillips and Jarrett. According to Watson, the three of them, Watson, defendant, and Cork, approached the two men in the backyard and indicated they wanted to buy drugs. According to Jarrett, only two men approached himself and Phillips with the intent to purchase drugs. Jarrett did not recognize either of the men. Both Jarrett and Watson testified that defendant walked toward Phillips. It was Phillips' and Jarrett's routine only to sell to people they recognized as known customers. Watson testified that defendant briefly spoke to Phillips. Jarrett testified that Phillips approved the transaction by nodding to Jarrett. Watson stated that he and Cork pretended to pull money out to give to Jarrett. At the same time, Jarrett bent over to retrieve the crack cocaine from the bushes. At this point, both Watson and Jarrett heard the sound of a gunshot. Watson looked up and saw defendant with his gun in his hand. Jarrett immediately tried to run away, but tripped.

Watson testified that he was surprised to hear the gunshot and pulled out his own gun and went after Jarrett. Watson grabbed Jarrett and threw him to the ground,

yelling at him, and demanding the drugs and money. Jarrett told him that the money was in his coat and then Watson grabbed the coat. Jarrett testified that when Watson threatened to shoot him with the revolver, he got up and ran away, jumped a few fences, and then hid from the police. Watson testified that Cork was present during the robbery, but after the gunshot he ran away. According to Watson, the last time he saw defendant, defendant was standing behind Phillips, "almost directly behind him. Kind of like at an angle, slight angle." Watson also testified that after the shooting, defendant left by walking around the side of the house. Watson then ran back to the parking lot and got into the truck with Edwards and Cork. They left the parking lot and eventually caught up with defendant a few streets over. The four of them returned to the drug house they were at when they had initially concocted the robbery plan. They split up the robbery proceeds amounting to about $200 in cash and 12 rocks of crack cocaine valued at approximately $300. None of them mentioned the shooting at that time and all kept silent. [FN 3]

> [FN 2   After being approached and questioned by police, Watson confessed to his involvement in the murder of Phillips on the date in question. Prosecutors initially charged Watson with felony murder, but in exchange for his testimony against defendant he pleaded guilty to second degree murder with a 15 year prison term recommendation from the prosecutor's office.]

> [FN 3 There is no mention in the record of prosecution of Cork or Edwards and defendant's brief on appeal intimates that neither of the men were prosecuted for their alleged involvement in the offense.]

*Coleman*, 2010 WL 1568452 at *1-2.

After citing the applicable standard of review for ineffective assistance of counsel,

the appellate court addressed petitioner's claim as follows:

Defendant asserts in particular that the trial court's reading of the following two instructions were "completely contradictory" and as a result constitute reversible error.  The first challenged instruction is as follows:

> Now you've heard that certain witnesses, William Finnie, Bruce Bryant, and Anthony Watson have been convicted of a crime in their past.  You should judge the witnesses - these witnesses' testimony the same way you judge the testimony of any other witness.  You may consider their past criminal convictions along with all other evidence when you decide whether you believe their testimony and how important you think it is.

18

The second challenged instruction is as follows:

Now, Anthony Watson, one of the witnesses, says he took part in the crime that the defendant is charged with committing. Anthony Watson has already been convicted of charges arising out of the commission of that crime. Anthony Watson has been promised that he will not be prosecuted for the crime the defendant is charged with committing. Such a witness is called an accomplice. You should examine an accomplice's testimony closely and be very careful about accepting it. You may think about whether the accomplice's testimony is supported by other evidence because then it may be more reliable. However, there's nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt. When you decide whether you believe an accomplice consider the following.

First, was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interest, biases or for some other reason.

Two, has the accomplice been offered a reward or been promised anything that might lead him to give false testimony.

And three, has the accomplice been promised that he will not be prosecuted or promised a lighter sentence or allowed to plead guilty to a less serious charge, if so could this have influenced his testimony.

Four, does the accomplice have a criminal record.

In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

Defendant's argument boils down to the following statement from his brief on appeal, "[i]t was only due to the erroneous jury instructions which confused the jury about how to assess Anthony Watson's testimony that [defendant] was convicted." But defendant does not explain how the jury instructions were contradictory or how they confused the jury. The first challenged jury instruction is based on a standard criminal jury instruction pertaining to witnesses with prior criminal convictions. *See* CJI2d 5.1. Clearly, Watson acknowledged his criminal background at trial. The second challenged jury instruction is based on standard jury instructions relating to a witness who is an undisputed accomplice, *see* CJI2d

5.4, and providing cautionary instructions regarding accomplice testimony, *see* CJI2d 5.6.

Defendant has not shown how these challenged instructions are in conflict. We agree with the prosecutor's argument that the sections are not mutually exclusive. Plainly both instructions applied to Watson. Watson had a criminal record that he acknowledged at trial. Also, Watson was a witness who was also an undisputed accomplice that provided accomplice testimony at trial. All of the provided instructions were relevant to the factual situation and were in fact given for the benefit of the defendant.

After reviewing the record, we conclude that defense counsel's failure to challenge the jury instructions given by the trial court was not ineffective because, viewing the jury instructions as a whole, "the instructions adequately protected defendant's rights by fairly presenting the issues to the jury to be tried." *People v. Dumas*, 454 Mich. 390, 396, 563 N.W.2d 31 (1997). Because an ineffective assistance of counsel claim may not be premised on failure to advance a meritless argument, defendant's argument fails. [*People v. Snider*, 239 Mich. App. 393, 425, 608 N.W.2d 502 (1999)].

*Coleman*, 2010 WL 1568452 at *4-5 (footnotes omitted).

In reaching this determination, the appellate court noted that:

It was only recently, in 2005, that our Supreme Court overturned thirty years of precedent when it held in *People v. Young*, 472 Mich. 130, 693 N.W.2d 801 (2005) that it was not automatic error for a trial court to choose not to caution the jury on accomplice testimony. Prior to the decision in *Young*, pursuant to *People v. McCoy*, 392 Mich. 231, 220 N.W.2d 456 (1974), it was automatic reversible error when the trial court did not caution the jury on accomplice testimony.

*Id.*, 2010 WL 1568452 at *5, fn. 7.

Because Watson both had a past criminal history and was an accomplice of petitioner, both standard jury instructions applied to him. As discussed, the trial court instructed the members of the jury that "You may consider their [i.e., Finnie's, Bryant's, and Watson's] past criminal convictions along with all other evidence when you decide whether you believe their testimony and how important you think it is." In addition, the Court gave a cautionary instruction which applied only to Watson's testimony as petitioner's accomplice which included, among other

considerations, "does the accomplice have a criminal record." As the Michigan Court of Appeals observed, prior to the *Young* decision in 2005 "it was automatic reversible error when the trial court did not caution the jury on accomplice testimony." *Id.* Such an instruction is consistent with the unreliable nature of accomplice testimony. *See United States v. McCallie*, 554 F.2d 770, 771-72 (6th Cir. 1977), ("[a]ccomplice testimony, of course, is not barred in criminal prosecutions, although the courts recognize the danger that it may be self-serving and unreliable"). Given these considerations, defense counsel had no basis to object to either instruction. Furthermore, nothing in the record indicates that the jury was confused by how to weigh Watson's testimony.

Based on this record, any objection to these instructions raised by petitioner's defense counsel would be without merit. As the state appellate court observed, "[b]ecause an ineffective assistance of counsel claim may not be premised on failure to advance a meritless argument, defendant's argument fails." *See Coley*, 706 F.3d at 752. *See also*, *Sanders*, 165 F.3d at 253; *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel").

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## V.	Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: December 11, 2017	/s/ Ray Kent
	RAY KENT
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).